UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD LETSON et al., individually and on behalf of all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br>Defendant. | Case No. 23-10420<br>Honorable Shalina D. Kumar<br>Magistrate Judge Anthony P. Patti |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 18)**

Plaintiffs, twelve individuals residing in states across the country, filed this putative class action against defendant Ford Motor Company ("Ford"), alleging a defect in model year 2020-2023 Ford Escapes and 2021-2023 Ford Bronco Sports that causes fuel injectors to crack, thereby risking engine fires. ECF No. 16. Based on this alleged defect, plaintiffs bring 22 claims against Ford, individually and on behalf of putative classes. *Id.*

Ford moves to dismiss. ECF No. 18. The parties fully briefed the motion, and the Court finds a hearing is unnecessary to decide the motion. ECF Nos. 18, 19, 21; E.D. Mich. LR 7.1(f). For the reasons below, the Court grants Ford's motion.

I. **BACKGROUND**

Ford manufactured model year 2020-2023 Ford Escapes and 2021-2023 Ford Bronco Sports with 1.5L engines (the "class vehicles"). ECF No. 16, PageID.599. Plaintiffs allege that these vehicles have defective fuel injectors—the fuel injectors are prone to cracking and, if cracked, tend to leak fuel into an affected vehicle's cylinder head, where the fuel can migrate to hot engine parts and cause an engine fire. *Id.*

In August 2022, after initiating a recall to fix engine oil separators posing a fire risk in under 1% of class vehicles, Ford identified cracked fuel injectors as also contributing to the fire risk in those vehicles. ECF No. 26, PageID.600; ECF No. 16-4, PageID.754-55. Over the useful life of the class vehicles, fuel injectors have at most a 0.40% chance of cracking, but if an injector cracks, the vehicle's engine structure could allow fuel to "migrat[e] to or accumulate[e] near ignition sources," potentially causing an engine fire. ECF No. 16-2, PageID.748; ECF No. 16-4, PageID.755.

To address the risk of fire from a cracked fuel injector, Ford contacted the National Highway Safety Administration (NHTSA) and initiated a second recall of the class vehicles in November 2022. *See* ECF No. 16-4, PageID.755. Ford informed class vehicle owners about the recall in

February 2023. *See Important Safety Recall*, NHTSA, https://static.nhtsa.gov/odi/rcl/2022/RCONL-22V859-8401.pdf.

Through the recall, Ford is addressing the fire risk from cracked fuel injectors by providing class vehicle owners the following services without charge: (1) an update to the engine control software to detect a cracked fuel injector, message the driver to seek service, derate engine power output, and reduce temperatures of possible ignition sources, and (2) the installation of a drain tube, so that if an injector should crack, fuel would be directed away from ignition sources and onto the ground instead. *See* ECF No. 16-4, PageID.756. In addition to this immediate recall repair, Ford promises a one-time fix for a cracked fuel injector over a class vehicle's useful life and reimbursement to owners who have already spent money to address the fire risk from cracked fuel injectors. *Id.*

Plaintiffs dispute the adequacy of the recall. They allege that four days after plaintiff Kellie Gillian received Ford's recall repair, she experienced a vehicle fire without warning on March 27, 2023. ECF No. 16, PageID.602-03.  Plaintiffs, however, provide no details about the cause of that fire. Plaintiffs also assert that the recall repair does not address the manufacturing flaws in the fuel injectors themselves; raises a "safety concern" from the potential for the engine to derate suddenly; and "creates

an environmental hazard and sets the stage for future property damage and possible injury" from the potential for fuel to leak out of a vehicle. ECF No. 16, PageID.604.

As a result, plaintiffs bring 22 claims against Ford, seeking to represent a nationwide class of persons who bought class vehicles, as well as state-specific subclasses. ECF No. 16. Plaintiffs seek money damages based on the overpayment for their class vehicles at the time of purchase. ECF No. 16, PageID.664, 742.

## II.     Standard of Review

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

"Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they

must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Additionally, "[c]ourts frequently take judicial notice of federal regulatory agency materials and materials available through federal agency websites pursuant to Federal Rule of Evidence 201(b)(2)." *Sharp v. FCA US LLC*, 637 F. Supp.3d 454, 459 (E.D. Mich. 2022).

### III. Analysis

Ford argues that its recall renders plaintiffs' case prudentially moot. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494

U.S. 472, 477 (1990). Federal courts lack the power to adjudicate moot "questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). Mootness "always . . . describes a situation where events in the world have so overtaken a lawsuit that deciding it involves more energy than effect, a waste of effort on questions now more pedantic than practical." *Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1209 (10th Cir. 2012) (Gorsuch, J.).

Most circuits, including the Sixth, have adopted the doctrine of prudential mootness. *Sharp*, 637 F. Supp. 3d at 463 (citing *Nasoordeen v. FDIC*, No. CV-08-05631, 2010 WL 1134888, at *6 (C.D. Cal. Mar. 17, 2010)). Sometimes, "a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Commerce of U.S. of America v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980).

Prudential mootness obtains "in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks. . . . [O]nce the plaintiff has a remedial promise from a coordinate branch in hand, [a court] will generally decline to add the promise of a judicial remedy to the heap." *Winzler*, 681 F.3d at 1210; *see*

*also id.* at 1211 (stating that remedial commitments from U.S. government branches are taken seriously "because they are generally trustworthy" and avoid "needless inter-branch disputes over the execution of the remedial process and the duplicative expenditure of finite public resources").

In *Winzler*, the Tenth Circuit held that a recall rendered the case prudentially moot. *Id.* at 1211. The plaintiff there alleged that certain Toyota Corollas had a defective engine part making the engines prone to stall without warning. *Id.* at 1209. But the plaintiff had a remedial commitment from a coordinate branch: after the lawsuit was filed, Toyota announced a national recall, thereby (1) assuming a statutory duty to notify all relevant defective vehicle owners and remediate the defect without charge and (2) subjecting itself to the continuing oversight of and potential penalties imposed by NHTSA. *Id.* at 1211. "Given all this, there remain[ed] not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits." *Id.*; *see also Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 379 (6th Cir. 2015) (holding case moot after statutory recall).

Similarly, when Ford issued its recall, it subjected itself to NHTSA's continuing oversight and authority to impose "stiff fines if [Ford] fails to carry out the recall" effectively. *Winzler*, 681 F.3d at 1209; *see also Diaz v.*

*Ford Motor Co.*, No. 23-10029, 2023 WL 6164455, at *5 (E.D. Mich. Sept. 21, 2023) (stating NHTSA monitors safety recalls like Ford's "to make sure owners receive safe, free, and effective remedies" (citation omitted)). Through the recall, Ford is remediating the defect in the class vehicles by addressing the fire risk from cracked fuel injectors without charge. Its remedial measures include (1) updating the vehicles' software to detect cracked fuel injectors and, upon detection, reduce engine operation and (2) installing a drain tube to divert fuel from a cracked fuel injector away from ignition sources. ECF No. 16, PageID.602. Ford further promises a one-time repair of cracked fuel injectors over the useful life of the vehicles. Because NHTSA will ensure that Ford carries out these measures to remediate the fire risk from cracked fuel injectors, plaintiffs' claims are prudentially moot. *See Winzler*, 681 F.3d at 1211; *Hadley*, 624 F. App'x at 379.

Plaintiffs counter that their case is not prudentially moot because the recall does not eliminate their injuries. Indeed, a court will continue an otherwise prudentially moot case if the plaintiffs show that despite the recall, they still have an "actual or imminent injury, not a conjectural or hypothetical one." *Hadley*, 624 F. App'x at 380 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)) (affirming dismissal of diminished-

value injury claim based on vehicle recall and finding assertion that recall may not be effective, without more, merely evidences hypothetical possibility of inadequate repair); *see also Winzler*, 681 F.2d at 1211-12 (holding otherwise moot case continues if plaintiffs shows "cognizable danger" of incomplete remedy).

Here, plaintiffs assert that their diminished-value injuries still exist— that is, they claim they overpaid for their vehicles at the time of sale because the undisclosed defective fuel injectors diminished their vehicles' value. But Ford's recall measures would remediate the very same "defect upon which" the "diminished-value injury claim[s] [are] based," thereby restoring their vehicle's values and eliminating plaintiffs' overpayment injuries.[1] *Hadley*, 624 Fed. Appx. at 378; *see Pacheco v. Ford Motor Co.*, No. 22-11927, 2023 WL 2603937, at *4 (E.D. Mich. Mar. 22, 2023) (holding same where recall remediated spontaneous fire risk but, plaintiffs contended, did not address the defect that actually caused fuel or oil leaks),

---

[1] Plaintiffs argue that even if Ford's recall eliminates the fire risk from cracked fuel injectors, Ford's recall ignores "the actual defect on which Plaintiffs' claims are founded: the defective fuel injectors themselves." ECF No. 19, PageID.1490. However, Ford argues that the risk of cracked fuel injectors or actually cracked fuel injectors, absent a fire risk, is not an actual or imminent injury because a vehicle with a failure-proof fuel injector is not part of each plaintiff's bargain with Ford. Plaintiffs do not respond to Ford's argument, thereby conceding the issue. *See Eid v. Wayne State Univ.*, 599 F. Supp. 3d 513, 532 (E.D. Mich. 2022), *aff'd*, (6th Cir. Mar. 15, 2023).

*motion for relief from judgment dismissed*, No. 22-11927, 2024 WL 188369 (E.D. Mich. Jan. 17, 2024).

Despite their contentions otherwise, plaintiffs fail to allege sufficient facts showing that Ford's recall is ineffective such that they have "actual or imminent," post-recall injuries. *Hadley*, 624 F. App'x at 380. Plaintiffs assert that plaintiff Kellie Gillian experienced an engine fire four days after her vehicle had undergone Ford's recall repair, so "[c]learly, Ford's recall does not prevent vehicle fires." ECF No. 19, PageID.1488. But plaintiffs do not allege that a cracked fuel injector caused this fire, and without more, the Court cannot properly make such an inference where the complaint shows that very few fuel injectors ever crack and other parts may cause fires in the class vehicles. *See* ECF 16-2, PageID.748 (showing rate of fuel injectors cracking, estimated over effectively the life of vehicles, is 0.38% for 2020 model-year vehicles and 0.22% for 2021–2022 model-year vehicles); *id.* at PageID.750-51 (recall report describing fire risk posed by engine oil separators in the class vehicles).

Moreover, Ford's recall does not promise to prevent all vehicles fires. Rather, it promises to remediate the defect, which is that the class vehicles' fuel injectors may crack and leak fuel to ignition sources, thereby presenting a fire risk. To eliminate the safety risk of cracked fuel injectors

Page **10** of **12**

causing engine fires, Ford's recall changes the class vehicles' engine structure and operation. If anything other than fuel leaking from a cracked fuel injector caused plaintiff Gillian's vehicle fire, it has no bearing on the effectiveness of Ford's recall. With nothing but allegations of a single vehicle fire of unknown cause, plaintiffs fail to show that Ford's recall is ineffective such that they still have an actual or imminent, post-recall injury. *See Diaz*, 2023 WL 6164455, at *4 (holding plaintiffs' injury speculative where no facts showed they experienced same defect that recall was intended to fix).

Finally, plaintiffs express potential safety and environmental concerns as post-recall injuries. Plaintiffs allege that the recall presents a safety concern because it can cause a class vehicle's engine to suddenly derate and that the recall creates "the potential for new environmental hazards" from leaking fuel, ECF No. 19, PageID.1491, "set[ting] the stage for future property damage and possible injury." ECF No. 16, PageID.604. But plaintiffs point to no facts suggesting that their engines have derated or their fuel has leaked after receiving a recall repair, and any plaintiff who does have either experience and suffers personal injury or property damages is excluded from plaintiffs' proposed classes. *See id.* at PageID.663. Because plaintiffs only hypothesize that the recall leads to

safety and environmental issues and do not otherwise show an actual or imminent, post-recall injury, plaintiffs' claims are prudentially moot.

## IV. Conclusion

For the reasons above, defendants' motion to dismiss (ECF No. 18) is **GRANTED**. This case is **DISMISSED**.

Dated: February 28, 2024

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge